**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Robert B. PARKE, d/b/a Southwestern Guard Service, Defendant.**

**Civ. A. No. 66–H–789.**

United States District Court, S. D. Texas, Houston Division.

March 17, 1971.

Peter G. Nash, Sol. of Labor, Washington, D. C., M. J. Parmenter, Regional Sol., and Richard L. Collier, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Robert C. Maley, Jr., Sheinfeld, Maley & Kay, Houston, Tex., for defendant.

## MEMORANDUM OPINION

BUE, District Judge.

This action was instigated by the Secretary of Labor pursuant to § 17 of the Fair Labor Standards Act of 1938, 29 U. S.C. § 201 et seq., to enjoin defendant from violating the overtime and record keeping requirements of the Act, and to restrain defendant from continuing to withhold unpaid overtime compensation due to his employees.

The defendant is engaged in a business whereby he furnishes a guard service for various buildings in Houston, Texas. These buildings were principally occupied by banks, government agencies, or businesses regularly engaged in handling bank paper, commercial paper, or other materials regularly shipped in interstate commerce. The employment duties of defendant's employees generally encompassed protecting the buildings from fire, theft, and trespassers. However, even though the bank guards were under instructions from the defendant not to engage in any type of bank connected activities, such as acting as bank messengers, there is evidence that they did, on occasion, violate these instructions. None of the bank guards were paid time and a half for overtime.

At the original trial the defendant admitted noncompliance with the Act's overtime requirements, but claimed that his employees were not covered by the Act since they were not engaged in commerce or in the production of goods for commerce. The District Judge concluded that defendant's employees were within the mandates of the Act. However, he declined to grant an injunction compelling restitution of overtime wages due said employees, and further he declined to grant injunctive relief against future violations by the said defendant. Primary reliance was placed upon evidence presented at the trial that the defendant had acted in good faith, upon the reliance of counsel, and that it was highly probable the defendant would comply in the future. Wirtz v. Parke, C.A. No. 66–H–789 (S.D.Tex., April 1, 1968).

On appeal, the Fifth Circuit Court of Appeals concluded that the trial judge had abused his discretion in not entering an injunction which would have commanded the restitution of withheld overtime compensation. As a result, that Court reversed as to that aspect of the case and commanded that an appropriate injunction be granted. As to the failure of the trial court to enter an injunction against future potential violations, the Court vacated and remanded that aspect of the case for the trial court to resolve the uncertainty surrounding that issue. Specifically, the Court felt that there was "great uncertainty" as to whether or not the defendant acted in good faith in refusing to comply with the Act, and whether or not there was a lack of necessity for an injunction against future violations of the Act. Shultz v. Parke, 413 F.2d 1364 (5th Cir. 1969).

On remand to this Court, a hearing was held at which time evidence was presented as to the amount of overtime

compensation due defendant's employees and as to the good faith of the defendant in not complying with the Act in reference to the necessity of a permanent injunction being issued against future probable violations.

## I.

### THE RESTITUTION OF PAST DUE OVERTIME WAGES

 For the reasons stated in the opinion of the Court of Appeals, defendant's employees are entitled to receive time and one-half of their regular wage rate for all hours worked overtime for which such compensation was not received. Both parties are in agreement that the defendant owes his employees the sum of $5,581.06 in unpaid overtime compensation. This amount was computed from the employees' time sheets and covers the time period between November 15, 1964, and November 19, 1967.

## II.

### THE ISSUE OF INJUNCTIVE RELIEF AGAINST FUTURE VIOLATIONS

At the hearing on remand, the defendant presented evidence that immediately after being approached by the investigator for the Wage and Hour Division of the Labor Department he contacted his counsel and inquired as to whether or not his employees were covered by the Act. At that time the issue of potential coverage was researched and briefed by said counsel. As a result of that research, a memorandum was compiled. In that seven page analysis of the law, defendant's counsel concluded that while this was by no means a clear situation, he felt that the defendant's employees were not within the mandates of the Act.[1] Primary reliance was placed on

1. That memorandum stated in its conclusion that:

I have concluded that the employees of Parke & Associates are not covered provided that it can be shown that they do not perform any directly essential task. It can be shown that they are in fact dispensible to the operation and

that they do not touch or affect any portion of the bank's commerce and do not in any way expedite nor retard the movements of securities, commercial paper, or currency as would normally flow in the stream of commerce. (Memorandum of Ronald Ramey, at 6–7).

two fairly recent Fifth Circuit cases.[2] Additionally, evidence was presented that defendant's counsel held a conference with the investigator for the Wage and Hour Division, Mrs. Schultz, wherein they discussed the potential susceptibility of defendant's employees to the mandates of the Act. At the termination of that conference, said counsel requested that, if the Wage and Hour Division still felt that defendant's employees were covered, someone from the Division's legal department get in touch with them so that they might discuss the matter further. However, the legal department of the Wage and Hour Division apparently did not contact the defendant's counsel. Also at the hearing on remand, credible evidence was presented that the defendant did pay his employees who worked at federal buildings time and one-half for overtime as required by a contract with the government. However, the defendant was under the mistaken impression that he need pay them overtime only for hours that were actually worked at the federal building. As a result, he did owe these employees overtime compensation when they worked part of the week at another non-federal building job. Finally, both parties were in agreement that the defendant has not been in violation of the Act since November, 1967.

■ At the outset, it should be recognized that the question of whether or not a restraining injunction pursuant to § 17 of the Act, 29 U.S.C. § 217, should be issued is an equitable matter coming within the general equity jurisdiction and powers of the trial court. Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965). However, while the trial court has discretion in this matter, its course of action is restricted by the requirement that this discretion be exercised "with an eye to the purposes of the Act". Wirtz v. B. B. Saxon Co., 365 F.2d 457, 462 (5th Cir. 1966).

■■ There is no doubt that the issuance of an injunction in such a case as this is not a drastic remedy. The court merely requires the defendant to do that which the law commands. The primary function of the injunction is to shift the responsibility for monitoring compliance with the Act from the Labor Department to the employer. It has been indicated that fairness in economy of administrative effort requires that after an employer has violated the provisions of the Act, he should bear the burden of future compliance. Goldberg v. Cockrell, 303 F.2d 811 (5th Cir. 1962). However, the ultimate decision as to whether or not future violations of the Act should be enjoined must be determined on the basis of the facts presented in each case. Mitchell v. Ballenger Paving Co., 299 F. 2d 297 (5th Cir.), cert. denied, 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 503 (1962).

It is an established rule that in making a determination of whether or not to enjoin future violations two factors should be considered: (1) the employer's previous acts of non-compliance; and (2) the dependability of his promises for future compliance. Wirtz v. Atlas Roofing Manufacturing Co., 377 F.2d 112 (5th Cir. 1967).

■ Looking at the first factor, the previous acts of non-compliance, it is clear that this defendant violated the Act as to only one particular—the failure to pay overtime compensation. There is no evidence of repeated violations by the defendant of various sections of the Act. Compare Wirtz v. Atlas Roofing Manufacturing Co., 377 F.2d 112 (5th Cir. 1967). The totality of evidence concerning defendant's violations revolve around his mistaken opinion that his employees were not rendering essential services that could be connected with the production of goods to be transported into interstate commerce.

As to the second factor, the dependability of the employer's promises for fu-

---

2. Sams v. Beckworth, 261 F.2d 889 (5th Cir. 1958).; Mitchell v. Jaffe, 261 F.2d 883 (5th Cir. 1958).

ture compliance, the defendant relies upon the fact that he was in good faith when he did not pay the overtime compensation and that for a period of over three years the defendant has not been in violation of the Act's provisions. The defendant argues that this tender of proof is indicative of a strong probability of future compliance. *See* Wirtz v. Atlas Roofing Manufacturing Co., 377 F.2d 112 (5th Cir. 1967).

The plaintiff suggests that defendant's proof as to good faith is nothing more than a showing of laxity in his business operations. It is true that a defendant's "ostrich like attitude of self-delusion" will not establish the basis of a good faith belief on his part. Mitchell v. Hausman, 261 F.2d 778 (5th Cir. 1958). Additionally, plaintiff contends that defendant's assertion that he relied upon his counsel is not sufficient for the reasons stated in Mitchell v. Blanchard, 272 F.2d 574 (5th Cir. 1959). In *Blanchard,* however, the defendant relied upon counsel's opinion that he was not in violation of the Act's provisions as to some of the alleged violations. The court held that "the most cursory examination" by counsel would have disclosed that the defendant was covered by the Act. Further, in that instance defendant's counsel at first denied coverage and then repeatedly delayed the government's proceedings and just prior to trial admitted the violations with no apparent basis for the change in his position. On this basis the Court held that the defendant's reliance upon counsel was not in good faith. 272 F.2d at 577.

Contrary to *Blanchard,* the defendant in this instance consulted counsel immediately after the violation was brought to his attention, and his counsel continuously denied coverage from the outset until November, 1967. Further, after a detailed examination of the cases in this area, it is this Court's conclusion that, while there is little doubt that the defendant's employees are included within the mandates of the Act, coverage in this instance is by no means an "open and shut" matter.[3]

The plaintiff further alleges that the fact that the defendant did not comply when he was first approached by the investigator for the Labor Department and the fact that he continuously refused to comply until sometime later are indicative of a lack of good faith on his part. However, it is well recognized that, if coverage is a matter upon which

---

3. An examination of the cases presented by the parties support this conclusion. In Sams v. Beckworth, *supra,* and Mitchell v. Jaffe, *supra,* the Court·held that night watchmen were not covered either because they did not render services that were directly essential to the production of interstate goods or because the materials or products did not move in interstate commerce. In Durkin v. Joyce Agency, Inc., 110 F.Supp. 918 (M.D.Ill. 1953), aff'd, sub nom., Mitchell v. Joyce Agency, Inc., 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740 (1955), the Court held that because the defendant offered a highly systematic protection service which exceeded normal watchmen activity that the watchmen contributed materially and directly to interstate commerce and, therefore, the employees were covered by the Act. In Russell Co. v. McComb, 187 F. 2d 524 (5th Cir. 1951), it was held that a night watchman was engaged in interstate commerce in defendant's wholesale grocery operations because that watchman guarded said property, including the loading platform where interstate shipments were loaded and dispatched. In Public Building Authority of City of Birmingham v. Goldberg, 298 F.2d 367 (5th Cir. 1962), it was held that night watchmen and others employed in a U. S. Social Security Administration building were within the scope of the Act because the federal employees were producing goods for commerce and the defendant's employees were engaged in an occupation directly essential to that work. In Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298 (1944), it was held that a night watchman was covered by the Act because it was the watchman's duty to protect the building and machinery from destruction by theft, fire or trespass, and that the very fact that a fire insurance company was willing to reduce the premiums on such building under the condition that a watchman be kept on the premises was evidence that the watchman was contributing substantially to the continuous production of defendant's goods.

"well advised legal minds" might reasonably differ, then a defendant cannot be penalized for exercising his right to a judicial determination. Shultz v. Parke, 413 F.2d 1364 (5th Cir. 1969); e. g., Mitchell v. Blanchard, *supra;* Goldberg v. Cockrell, 303 F.2d 811 (5th Cir. 1962); Mitchell v. Hausman, 261 F.2d 778 (5th Cir. 1958). Since it is this Court's conclusion that coverage in this instance is not an "open and shut" matter, the defendant should not be penalized for desiring a judicial determination of the issues involved in this cause.

Furthermore, the plaintiff's other cases can be distinguished from this situation. In Gatlin v. Mitchell, 287 F.2d 76 (5th Cir. 1961), cert. denied, 366 U.S. 963, 81 S.Ct. 1925, 6 L.Ed.2d 1255 (1961), it was indicated that where an employer stipulates that he will in the future abide by the Act and then continues to violate the same provisions, an injunction is the only proper remedy. Here, the defendant at no time stipulated that he would comply with the Act and then did not. On the contrary, he has been consistent in his views and actions that he was not covered by the Act from the outset of the investigation by the Labor Department. Further, in Wirtz v. Atlas Roofing Manufacturing Co., *supra,* the defendant demonstrated a clear indifference toward his responsibility under the Act and, as a result, the court was inclined to issue a permanent injunction against future violations. As opposed to that finding, it is this Court's conclusion that defendant has at all times demonstrated a genuine interest and desire to comply with the Act. Therefore, it cannot be said that he was indifferent toward his responsibility under the Act. Finally, in Shultz v. Hinojosa, 432 F.2d 259 (5th Cir. 1970), it was held that "when repeated violations have occurred before the current suit was commenced, and the present violations are plain, and deal with easily understandable matters * * * an injunction is * * * legally demanded." Besides the fact that that case involved previous violations (including a criminal prosecution), the defendant had, without reasonable explanation, failed to keep adequate records. Here, the defendant has not been shown to have violated any provision of the Act except the overtime compensation requirements, and there is no evidence that he has not maintained adequate records.

 Having decided that the defendant acted in good faith in not paying his employees overtime and that a high probability of future compliance is clearly established, this Court holds that the application for injunctive relief against future violations will be denied. Plaintiff is entitled to an order restraining the withholding of overtime compensation due the employees in an amount of $5,581.06, without regard to interest.